### CRUCIBLE STEEL CO. OF AMERICA v. MOEN.

(Circuit Court of Appeals, Second Circuit. February 16, 1909.)

#### No. 164.

1. APPEAL AND ERROR (§ 1045*) — REVIEW — IMPANELING JURY — OVERRULING CHALLENGE.

The overruling of a challenge to a juror for favor because of his intimate acquaintance with one of the beneficiaries for whom plaintiff sued as trustee *held* not reversible error, where the fact of such person's interest in the case was only disclosed after the jury had been sworn and the remaining members of the panel ·excused, by a re-examination permitted to defendant's counsel, who, without excuse shown, was not present when the jury was impaneled.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1045.*]

2. TRIAL (§ 48*)—EVIDENCE ADMISSIBLE IN PART.

The exclusion of all of a bundle of letters, offered in evidence, without any attempt to show how any of them bore on the issues, was proper, where many of the letters were incompetent, especially where but little light could have been thrown on the case by the admission of any of them.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 120; Dec. Dig. § 48.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

MacIntyre & Davis (William J. Wallace and William B. Ellison, of counsel), for plaintiff in error.

Frederick Dwight (Hector M. Hitchings, of counsel), for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The action was brought to recover the balance due upon a contract made October 16, 1901, between the Mossberg & Granville Manufacturing Company and the Crucible Steel Company—the defendant below—whereby the former company agreed to manufacture for the latter, certain wire drawing machinery and rolling mills, with appurtenances, for the agreed price of $48,470.

The complaint alleges that the Mossberg Company performed all the conditions of the agreement, including certain extra work to the amount of $3,600, for which the defendant agreed to pay and that payment of the balance, $18,874.99, was demanded and refused. There was also a claim for three articles alleged to be worth $38.50.

The entire cause of action was duly assigned to the plaintiff.

The answer contains a general denial, and, for a separate defense, alleges a counterclaim of $24,000, stated in the following averments:

First: That the Mossberg Company agreed to complete the work within six months from October 16, 1901, and warranted that the machinery should be free from defects and able to perform the work required.

Second: That work was thereafter done and the machinery delivered for which defendant paid the sum of $33,403.89.

Third: That when an attempt was made to operate said machinery it was discovered that it was inferior in quality and latently defective and it was thereupon rejected by the defendant.

Fourth: That the machinery was not delivered until long after the expiration of the six months as aforesaid, greatly to the damage of the defendant.

By reason of the alleged delay, and defects in the machinery furnished, the defendant alleges damages in the sum of $24,000, for which sum judgment is demanded.

The first question argued relates to the refusal of the court to allow a challenge to the fifth juror for favor.

The cause was called for trial on the morning of Thursday, October 24, 1907, and both parties answered ready. There was a cause on trial, which, it was expected, would last until 2 o'clock but, in fact it took the entire afternoon. In order to accommodate the jurors, who were anxious to be excused, the judge consented to impanel a jury at once in the case at bar as he was thus enabled to excuse the jurors not actually engaged until the following Monday. The representative of Mr. Davis, counsel for the defendant, was instructed by the judge to notify Mr. Davis to appear in court and attend to the selection of the jury, he did not appear and the record does not present any valid excuse for his failure to do so. It does show, however, that he did appear immediately after the jury had been impaneled.

The counsel for plaintiff and his witnesses had then left the courtroom.

When it became evident that the defendant's counsel would not be present the judge examined the jurors in his behalf and asked them, it would seem, every question necessary in a civil action. They were then sworn and excused until the next day.

After the opening of the court on Friday morning the defendant's counsel asked permission to examine the jurors and thus discovered that the fifth juror was intimately acquainted with one of the beneficiaries, under the trust assignment. But for this examination the jurors would not have known who these beneficiaries were. No exigency of the trial required the disclosure of their names. The challenge was for favor, and we think it was properly overruled. Of course it is easy to see that after the disclosure was made and the challenge overruled the defendant's counsel was placed in an exceedingly embarrassing position—no additional jurors were in court and his right to a peremptory challenge was gone.

It must not be forgotten that the difficulty arose from the initial neglect to have some one in court to represent the defendant.

We can readily understand that the defendant's counsel might have felt himself aggrieved by being compelled to proceed with a juror he had challenged, and, perhaps, a suggestion from the court that a talesman be summoned or that the cause proceed with 11 jurors would have been assented to by the plaintiff's counsel and thus have relieved the situation. However, the ruling complained of does not constitute reversible error.

No one who has presided for any length of time at jury trials in the city of New York can ignore the fact that the convenience of jurors, witnesses and counsel are constantly conflicting and that in order that the business may proceed in an orderly and harmonious manner the judge is frequently compelled to make dispositions of causes which are satisfactory to all interests at the time but which, as subsequently appears, occasion inconvenience and possibly hardship to some of the parties concerned.

It is manifest that in ordering the jury impaneled on Thursday the trial judge was exercising his discretion for the accommodation of the greatest number and he could not have foreseen the subsequent complications.

We were much impressed at the argument by the contention that there was error in the exclusion of the correspondence between the parties beginning November 11, 1902, and ending April 27, 1903, but an examination of the letters has convinced us that they were properly excluded.

While the witness Clark was being examined, and after the counsel for defendant had introduced a letter from the Mossberg Company, which was received and marked in evidence, he handed to the court a package containing 26 letters and telegrams, 16 of which were written by the defendant and 10 by Mossberg Company with the statement that he desired to offer them in evidence.

The testimony of Mr. Clark continued for some time, when, as the record shows, the following occurred:

"Mr. Davis: Were any of those letters marked as admitted?

"The Court: They are simply a crimination and recrimination * * * and they are each rejected with an exception to defendant as to each letter."

It appears, then, that this mass of correspondence covering 21 printed pages was handed to the court with no word of explanation. After the court had ruled the letters out as containing nothing but charges and countercharges, his ruling was accepted without any effort to point out where, in this mass of chaff, the wheat was to be discovered.

Without a doubt much the larger part of this correspondence was incompetent, if any part of it bore on the issues it was the duty of counsel for defendant to point it out. The rejection on this ground alone can be upheld.

We should, however, hesitate to rest the ruling solely on this ground if we were satisfied that any substantial injury had been done the defendant by the rejection of the letters, but we are convinced that they throw little, if any, light on the questions involved.

The contract was in two parts.

First: The Mossberg Company agreed to make for the defendant 10 machines for drawing high-carbon crucible steel wire pursuant to specification. The warranty as to these machines was as follows:

"We guarantee the above machines to be free from defects in workmanship and material, and to draw the following sizes (naming them) of crucible and high carbon steel wire at usual speeds, reductions and material."

Second: The Mossberg Company agreed to make for the defendant 34 rolling mills. The warranty as to these was as follows:

"We will guarantee the above machinery to be free from defects in material and workmanship."

That the machines were made in accordance with the specifications hardly admits of a doubt, and the principal question regarding the drawing machines was whether they were capable of drawing the wire as indicated; the Mossberg Company contending that the tests to which they were subjected were unfair and not "at the usual speeds, reductions and material."

As to the rolling mills the question debated was whether they were free from defects in material. Defects undoubtedly existed in the steel, but, as this was furnished by the defendant, the Mossberg Company was not responsible unless they should have discovered the defects by a reasonably skillful external examination.

Bearing in mind, then, the issues between the parties we are unable to see how the rejection of the letters prejudiced the defendant. As before stated, the great bulk of the correspondence was from the defendant and it must be admitted, generally, that after a dispute has arisen a party cannot, in this manner, make evidence for himself.

The facts were all proved and we have been unable to discover a single fact of importance stated in this correspondence which was not established by the testimony of the witnesses or by other letters

and documents in evidence. This being so, the deductions of parties based upon these facts and their opinion of each other's conduct was wholly immaterial.

We have examined the other exceptions argued and think none warrants a reversal of the judgment.

The questions above referred to were presented to the jury in a clear and impartial charge which stated with perfect fairness the contentions of the parties.

The judgment is affirmed with costs.